## NEGLIGENCE IN PLACING A LOAN.

Court of Appeals for Holmes County.

ROBERT S. TORBET v. NORA YOUNG.

Decided, November 1, 1915.

*Waiver by Silence of Trial to Jury—Loan Placed on Property to Which
Deed Had Been Forged—Agent Acting Without Pay and Claiming
to Have Been Duly Diligent—Held to Have Been Negligent and
Held Liable to the Owner of the Funds.*

1. Where so far as the record discloses, a party sat by in silence and
   permitted an action for money only to be tried without the inter-
   vention of a jury without interposing an objection thereto, he is es-
   topped from complaining for the first time in a court of review
   that he was prejudiced thereby.
2. An agent or bailee, serving without pay, made a loan on farm prop-
   erty to a stranger the title whereof was shown by an abstract to be
   perfect in the grantor of the borrower, who exhibited an unrecorded
   deed to the property which was placed on record before the loan
   was consummated. The deed proved to be a forgery, and the owner
   of the funds loaned brought an action against the party who acted
   for her in making the loan for the amount of her loss. *Held:*

The making of the loan to a stranger, without further inquiry than as
   to the validity of the title in his grantor, was gross negligence, and
   plaintiff is entitled to judgment for the full amount of the loss.

*Taggart & Ross* and *N. Stilwell,* for plaintiff in error.
*C. R. Cary,* contra.

HOUCK, J.

This is a proceeding in error seeking to reverse a judgment
of the court below in a suit in which the present defendant in
error, Nora Young, was plaintiff, and the plaintiff in error,
Robert S. Torbet, was defendant. The petition of the plaintiff
below is as follows:

"Plaintiff in her petition avers that some time prior to the
14th day of October, 1910, the defendant was employed as the
agent of plaintiff to obtain and make for plaintiff safe loans
secured by mortgage on real estate of which plaintiff had knowl-
edge, in the vicinity of defendant's home in Ripley township,

Holmes county, Ohio, and on or about September 12th, 1910, the defendant received from plaintiff about $2,800 in money to be held by him in trust for plaintiff, and to be used by defendant for said purposes, and for no other purpose; that defendant has failed and refused to comply with and carry out the terms and conditions of said agency and trust, and refused to account for said money on demand, and prays for an accounting and for judgment for the amount found to be due, and for other relief, and for costs."

The defendant below filed an answer setting forth two defenses, the first defense being a general denial and the second defense being in substance as follows:

"That on or about September 10th, 1910, and for a long time prior thereto he received from plaintiff divers sums of money and at her request made loans and investments in her name; that on or about September 12th, 1910, he received $2,800 for said plaintiff, and informed her of the fact, and at her request retained said money, to be loaned and invested for her; that he loaned said money to one William Hoover, who represented himself to be the owner of a farm of ninety-seven acres situated near the village of Dalton in Wayne county, Ohio; that Hoover executed his promissory note for $2,800 with interest at six and one-half per cent. due in three years, and his mortgage deed conveying said farm to plaintiff to secure said note, and delivered said note and mortgage to defendant, and that said defendant placed said note and mortgage with other papers and evidences of indebtedness belonging to plaintiff, which were deposited in the Farmers Bank at Shreve, Ohio; that all of said defendant's acts relating to the loaning of said money were in good faith, without compensation and wholly gratuitous, and that in all of his acts pertaining thereto he exercised reasonable care and prudence."

The answer further alleges, and in detail, that notwithstanding the fact that it was afterwards learned that the deed to said ninety-seven acre farm upon which said $2,800 loan was made had been forged by said Hoover, and although Hoover had not the legal title to said farm, yet said loan having been made in good faith, and he (Torbet) having exercised reasonable care and prudence, prays to go hence without day.

A reply in the nature of a general denial was filed by plaintiff below to this answer, and upon the issue joined the case

was submitted to the court upon the evidence, without the in-
tervention of a jury. The record is silent as to anything relat-
ing to the submission of the cause to a jury. The court found
for the plaintiff below in the sum of $2,800, with interest from
October 14th, 1910. The plaintiff in error seeks a reversal of
this judgment upon two grounds: first, that the cause being
one triable to a jury the court below erred in permitting the
same to be tried without the intervention of a jury; second,
that the judgment is manifestly against the weight of the evi-
dence and is contrary to law.

Proceeding now to the alleged errors, let us first determine
whether or not the action at bar is for the recovery of money
only. This must be determined from the language of the peti-
tion and the relief sought therein. Without discussing the
question we think the allegations of the petition constitute a
cause of action for the recovery of money only and therefore
is triable to a jury. Having arrived at this conclusion, the
next inquiry is: Have the rights of the plaintiff in error been
prejudiced by the court trying the case and rendering a judg-
ment without a jury having been first waived? The record
shows that both parties appeared and without objection or
question as to the right of the court to try and determine the
cause submitted the same to the court, and the first objection
in that regard is made in this court. No question is made here
that the court below was, without jurisdiction to hear and de-
termine the rights between the parties, but it is claimed that
being an issue triable by jury that it could not be tried by the
court without a waiver by the parties of a jury, and there being
no waiver by the parties of record the judgment should be re-
versed.

So far as appears from the record here presented the defend-
ant below preferred to have the case tried to the court and not
submitted to a jury; he made no demand for a jury trial; he
sat by in silence and permitted a trial to the court without in-
terposing any objection thereto, and made none until after the
issues were found against him, and he certainly is now estopped
from making any such claim. We think the rule of law here
laid down is well established in Ohio, and we need refer to but

two cases; *Bonewitz* v. *Bonewitz,* 50 O. S., 377-378, where the court say:

"To submit a case to a court is an affirmative act; it is to ask the court to hear the evidence, consider it and apply the law. What more potent consent could be given than this? A jury was not demanded because in all probability the counsel and the court alike regarded it as a court and not a jury case. * * * But actions sometimes speak louder than words. It was not until after the court had found and adjudged against the defendant that he discovered he had been prejudiced by not having his case tried to a jury. His objection to the mode of trial we think comes too late; to sustain his claim would seem to be trifling with justice. He proceeded to trial, without objection, to a court having jurisdiction of the parties and capable of being clothed with jurisdiction of the subject-matter for all purposes, taking his chances on a favorable result, and can not, now that the chance is turned against him, be heard to question the authority of the tribunal to which he consented to submit his cause."

And also the case of *Lingler* v. *Wesco,* 79 O. S., 243, where the court say:

"Therefore it appears that no one objected to the court hearing the evidence and passing on it. No one asked for a jury, but the parties proceeded with the submission of the case. The condition of the record here warrants the use of the rule established in *Bonewitz* v. *Bonewitz,* 50 Ohio State, page 373. A party may waive his right to a jury trial by acts as well as by words."

Coming now to the second ground of alleged error, namely: Is the judgment manifestly against the weight of the evidence and contrary to law? Counsel for plaintiff in error contend that the said plaintiff in error occupied the position of agent or bailee of the defendant in error, without pay, and being a gratuitous agent or bailee could only be held liable for acts of gross negligence. Admitting that to be the law, do the facts in the case at bar as disclosed by the record, and applying thereto the well established elements necessary to constitute gross negligence, warrant the finding of this court that the plaintiff in error was guilty of gross negligence; or did he, un-

der all the circumstances and surroundings, act and do in the
premises and exercise such care as a person of common pru-
dence should have done? Counsel for plaintiff in error inquire,
"What could Torbet have done that he did not do to be more
careful in negotiating this loan? He was informed by Judge
Weiser of the character and value of the land; he acquired
an abstract of title which showed the title to be perfect; he
insisted that the abstract be made by attorneys in whom he
had confidence and who had been attorneys for Mrs. Young
in her claims and partition suit; he saw the note and mortgage
signed; took it to the recorder's office and had it recorded;
saw that Hoover had the deed transferred at the auditor's office
and duly recorded, and retained the abstract in his possession,
placing the note with the rest of Mrs. Young's papers."

We think these inquiries would be pertinent if the loan that
Torbet was about to make for Mrs. Young was being made to
the Mosers, the alleged grantors in the deed to Hoover, but the
loan was being made to Hoover, and it seems to the court that
the real foundation or basis of the loan was the strength of the
title in William Hoover. The loan was being made to him, and
Torbet's inquiries and investigations should have at least been
directed as to the title in Hoover. Hoover was a perfect
stranger, and we might ask, What inquiry did Torbet make as
to him? Not any! What inquiry, if any, did any of the per-
sons in interest make as to the standing, honesty or integrity
of William Hoover? Not any! A stranger, unknown to Torbet
or any one connected with the transaction, was entrusted with
the duty of seeing that the deed from Moser to him was prop-
erly executed—which afterwards proved to be a forgery!
Hoover stated that he was a widower, and without any inquiry
on the part of Torbet to ascertain as to the truthfulness or un-
truthfulness of that statement he was permitted to sign the
mortgage alone, and received the $2,800 from Torbet. Without
any acquaintance with or knowledge of Hoover on the part of
Torbet prior to this transaction, he assigned the $2,800 certifi-
cate of deposit over to him, and at least stood by and saw him
receive the money from the bank on this certificate of deposit.
All of this was done with a stranger; no one had recommended

him to Torbet, and so far as the record shows he made no inquiry concerning Hoover. What inquiry did Torbet make of the grantors in the deed, or of the witnesses to it, or of the notary who was reputed to have acknowledged it? Not any! In the face of these facts can it be properly claimed that plaintiff in error exercised that care and prudence required of a gratuitous agent or bailee? Certainly not. What constitutes gross negligence has been defined by our Supreme Court in the case of *Johnson* v. *State*, 66 O. S., 67-68, where the court say:

"Negligence may consist of acts of omission as well as commission, and what may be mere ordinary negligence under one class of circumstances and conditions may become gross negligence under other conditions and circumstances. Negligence is the failure to exercise ordinary care. Gross negligence may consist in failure to exercise any or very slight care. There are other definitions, but these are sufficient now for our purpose, so we may truly say that negligence differs only in degree. With this we can not overlook what experience has taught for many years: that what may seem ordinary negligence when contemplated by one mind may be regarded by another as very gross negligence. The inferences drawn from the same facts by different minds may often greatly differ."

Applying this rule of negligence to the facts in the present case the plaintiff in error was certainly guilty of such negligent acts of omission as well as commission as would not justify a reversal of the judgment below. We think the claim made by the plaintiff in error is untenable, and finding no error in the record prejudicial to the rights of plaintiff in error the judgment of the common pleas court is affirmed.

SHIELDS, J., and POWELL, J., concur.